IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,   :
:
v.   :   CRIMINAL INDICTMENT NO.:
:   2:16-CR-00015-RWS-JCF
THOMAS EARL RUSSELL, III   :

## ORDER and REPORT AND RECOMMENDATION

This case is before the Court on Defendant's motion and corrected motion to suppress evidence (Docs. 13, 21). For the reasons discussed below, it is **RECOMMENDED** that Defendants' motions be **DENIED**.

## Procedural History

An Indictment filed April 28, 2016 charges Defendant with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count One) and possession of an unregistered silencer in violation of 26 U.S.C. § 5861(d) (Count Two). Defendant filed a motion to suppress evidence (Doc. 13) and later filed a corrected motion to suppress (Doc. 21). On June 27, 2016, the Court conducted a hearing on Defendant's motions (*see* Doc. 23), and a transcript[1] of that hearing was filed on July 12, 2016 (Doc. 30). Defendant filed a post-hearing brief on August 7, 2016 (Doc. 33), the Government submitted a response on August 20, 2016 (Doc.

---

[1] References to that transcript will be designated as "Tr. __."

34), and Defendant filed a reply on September 28, 2016.  With briefing now complete, the Court considers the merits of Defendant's motions.

## **Facts**[2]

In November and December 2014, Christian Robert Moody lived in a house at 4310 Matt Highway in Cumming, Georgia, which he rented from the owner in exchange for maintaining the property.  (Tr. 6-7).  Moody was also responsible for overseeing the rental of a studio apartment attached to the garage at that location and to collect rent.  (Tr. 8-9).  Defendant leased the apartment beginning December 1, 2014 for a term of 6 months so that he was supposed to move out by June 1, 2015 if the lease was not renewed.  (Tr. 12, 15; Gov't Ex. 1).  The lease required Defendant to pay $550 a month, to be paid no later than the 5th of each month.  (Gov't Ex. 1).  Defendant had his own entrance to his apartment, so Moody did not see him very often.  (Tr. 14).  When asked what mailing address Defendant used, Moody assumed that Defendant used "4310 Matt Highway," but indicated that Defendant "[n]ever received mail" until the eviction notices discussed below were sent to Defendant at 4310 Matt Highway, and Moody would then put the mail in Defendant's door.  (Tr. 14, 43).  Moody had a key to the studio apartment.  (Tr.

---

[2] These facts are taken from the testimony of Christian Robert Moody and Forsyth County Sheriff's Deputy Richard Michael Skibba, as well as exhibits admitted during the June 27, 2016 hearing (*see* Docs. 26 (Government's exhibits), 27 (Defendant's exhibits)).

43).  He only went inside the apartment once while Defendant was living there, to repair a sink in January.  (Tr. 44).

Defendant did not pay his rent for January, February, or March 2015. In April he gave Moody $400, and then he did not pay rent for May 2015.  (Tr. 14-15).  Around May 20th, Moody told Defendant that he intended to begin the eviction process, and Defendant told him that he was going to be moving out on June 15th, so "you can do the eviction, which will take three weeks, or you can wait for me to move out in three weeks," although Moody had the impression Defendant was not going to move out.  (Tr. 16, 45-48).  Defendant made no effort to catch up on the past-due rent.  (Tr. 16-17).  On May 21st, Moody delivered a letter to Defendant advising him to move out or Moody would begin the eviction process in five days.  (Tr. 19, 50-51).  Moody knocked on Defendant's door but he did not answer, so Moody put the letter in the doorjamb; it was gone the next day. (Tr. 19, 52-53).  Defendant did not appear to move out—his cars remained on the property and Moody saw him coming and going—so on May 27, 2015, Moody began the eviction process by going to the Magistrate Court of Forsyth County and completing a Dispossessory Proceeding affidavit in which he indicated that Defendant had failed to pay rent, and he demanded possession of the premises and the past due rent in the amount of $2350.  (Tr. 17-18, 54-55, 76; Gov't Ex. 2).

Moody identified Thomas Russell III as the defendant in that action, and he listed Defendant's address as 4310 Matt Highway, Cumming, Georgia.  (Gov't Ex. 2).

A magistrate court deputy clerk issued a summons commanding Defendant to file an answer to the affidavit within 7 days after the date of service of the affidavit and summons and warning Defendant that if he failed to answer, a writ of possession and/or judgment shall issue.  (*Id.*).  Forsyth County Sheriff's Deputy Jerry Loggins attempted personal service of the dispossessory paperwork on Defendant on June 1, 2015, but he was unable to make contact with Defendant although he saw several vehicles in the driveway.  (Tr. 106; Gov't Ex. 9).  Deputy Loggins attempted personal service on June 2, 2015 but was again unsuccessful. (Tr. 107; Gov't Ex. 9).   He then served Defendant with the dispossessory paperwork—including the summons, the dispossessory affidavit, and the "answer by" notice—on June 2, 2015 by "tack and mail," i.e., by placing that paperwork in the doorjamb to the house at 4310 Matt Highway and by mailing a copy to Defendant at that address.  (Tr. 84-89, 107-08; Gov't Ex. 2, 5, 7).  On that date, Moody found the paperwork in the doorjamb to the house, so he put it in the doorjamb to Defendant's apartment the same day Moody received it.  (Tr. 20-21, 58-59, 75-76).  A day or two later Moody saw that it was gone.  (Tr. 21).  Moody also received in the mail copies of that paperwork, one addressed to Moody and

one addressed to Defendant so he put Defendant's copy in his door.  (Tr. 21-23, 59, 61).  Moody later noticed that it was gone.  (Tr. 23, 62).

As of June 11, 2015 Defendant had not moved out, so on that date Moody completed an Application For Writ Of Possession indicating that Defendant had not filed an answer to the dispossessory affidavit and that Moody had not accepted money from him.  (Tr. 23-24; Gov't Ex. 3).  Moody then received a copy of the magistrate judge's June 12, 2015 judgment finding that Moody was entitled to a Writ of Possession against Defendant at 4310 Matt Highway, Cumming, Georgia 30028.  (Tr. 25-26; Gov't Ex. 8).  Moody took that writ of possession to the Forsyth County Sheriff's Office to schedule an eviction.  (Tr. 26, 89).  Deputies are present during the eviction to "help the landlord take the property back peacefully."  (Tr. 90).  The eviction was scheduled for June 19, 2015 at 1:30 p.m. (Tr. 26; Gov't Ex. 9).

On June 14, 2015, Defendant sent Moody a text asking him to make sure the cars were moved away from the garage so he could move out.   (Tr. 27). Defendant's car was gone as of June 15th, but his truck and a trailer were still there as of June 19th.  (Tr. 65-66).  An orange notice was sent to Defendant at the 4310 Matt Highway address telling him that the eviction would occur on June 19th, and he needed to move his belongings out if he did not want them to be lost or

damaged.  (Tr. 28).  Moody received that notice and stuck it in Defendant's door, but it was still there on the date of the eviction.  (Tr. 28).

On June 19th, Moody waited for the deputies to arrive before entering the apartment.   (Tr. 28).   When Deputy Richard Michael Skibba arrived, Moody opened the apartment with a key, and Deputy Skibba cleared the studio apartment to make sure Defendant or someone else who could pose a danger was not inside.[3] (Tr. 28-29).  Deputy Skibba did not search the apartment for anything other than occupants and he saw no firearms, but he did see ammunition lying around.  (Tr. 93-94).  No one was inside the apartment, so Moody and a friend who was helping him began moving items out.   (Tr. 29-30, 71, 93-94).   They placed items in garbage bags and set them out in the side yard. (Tr. 30).  During that process, Moody found a rifle underneath a pile of clothes on the couch.  (Tr. 31).  The rifle was not visible until Moody had removed some of the clothes, and Deputy Skibba had not seen it during his initial sweep of the apartment.  (Tr. 31, 96).  Deputy Skibba collected the rifle.[4]  (Tr. 31, 95).  Moody explained that he gave the rifle to

---

[3] Another deputy later arrived on the scene during the eviction.  (Tr. 112-13).

[4] Deputy Skibba testified that he was outside when Moody told him about the rifle (Tr. 95, 110-11), and Moody testified that Skibba was behind him in the apartment when he found the rifle (Tr. 31-32).   The undersigned does not find that discrepancy material where it is uncontroverted that Moody discovered the rifle as he removed Defendant's belongings from the apartment and then brought the discovery to Skibba's attention.

the deputy because he had never held a gun before, and the deputy explained that they would hold it until Defendant picked it up.  (Tr. 32-33).

After Moody discovered the rifle, Deputy Skibba asked Moody for contact information for Defendant in order to contact him to have him take possession of the rifle.  (Tr. 97).  Skibba explained that they prefer not to take possession of firearms if they do not have to, but if they cannot contact the owner, they will take firearms and place them in an evidence locker for safekeeping until the evictee picks them up rather than leave firearms outside with the evictee's other possessions.  (Tr. 97).  When Skibba tried to call Defendant, the call went straight to his voicemail.  (Tr. 97).  Skibba looked through some of Defendant's papers to try to find his birth date, but he was unable to find it.  (Tr. 98).  Skibba then did an internet search for Defendant and found somebody with his name who had been booked into the Gwinnett County Jail a few days prior to the eviction.[5]  (Tr. 99). He went to the Jail's website and found Defendant's name and date of birth and then ran that information through GCIC to find his driver's license information. (Tr. 99).  When he saw Defendant's driver's license photo, he asked Moody to confirm that it was Defendant, and Moody did so.  (Tr. 99).

Moody also saw something that looked like an oil can on the ground near the couch.  (Tr. 33-34, 70).  Deputy Skibba also saw the oil can, which had a hole

---

[5] The parties stipulated that Defendant was arrested on June 17, 2015.  (Tr. 120).

drilled on the bottom, and he believed it to be a homemade silencer.  (Tr. 96).  He saw that there was a thread welded onto the end of the rifle, and he was able to screw the oil can onto the rifle.   (Tr. 96).   Moody also found ammunition throughout the apartment, and the deputies instructed him to place it all in a box, and the deputies also took that box.  (Tr. 34).  Deputy Skibba also saw a bb gun (a Nitro Piston rifle) in the garage, which Moody said belonged to Defendant, so Skibba also took custody of that.  (Tr. 116, 118).  Deputy Skibba completed a Property & Evidence Sheet indicating that he took possession of the rifle, the silencer, the ammunition, and the bb gun.  (Def. Ex. 11).  The deputies were not involved in moving Defendant's belongings and did not touch anything or look through Defendant's belongings other than to try to find something with his birthdate on it.  (Tr. 32, 74, 95, 98).

## Discussion

Defendant argues that evidence seized from his apartment should be suppressed because it was seized without a warrant during an unlawful eviction in violation of the Fourth Amendment.  (*See* Doc. 33).  The Government contends that Defendant's motion should be denied because Defendant does not have standing to challenge the seizure of items from the garage apartment because Defendant had been evicted from the premises, the eviction was lawful, and the

search that lead to the seizures at issue was conducted by a private person, not law enforcement.  (*See* Doc. 34).

The undersigned finds that Defendant's motions to suppress should be denied because the evidence was not seized in violation of the Fourth Amendment. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."  U.S. Const. amend. IV.  "The 'ultimate touchstone of the Fourth Amendment is reasonableness.' "  *United States v. Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). Where a seizure is made without a warrant, as in this case, the burden is on the government to "demonstrate that the challenged action falls within one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment."  *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

As to the issue of standing, the Government contends that Defendant lacks standing to challenge the seizure of the rifle, silencer, and ammunition because he no longer had a legitimate expectation of privacy in his apartment from which he had been evicted.  (*See* Doc. 34 at 4-10).  "Only a 'person aggrieved' by an unlawful search and seizure may move to suppress seized property."  *United States*

*v. Conard*, No. 2011 U.S. Dist. LEXIS 125737, at *8-9 (N.D. Ga. Oct. 5, 2011)
(citing FED. R. CRIM. P. 41(g) & (h)), *adopted by* 2011 U.S. Dist. LEXIS 128330
(N.D. Ga. Nov. 4, 2011).  "In order to qualify as a person aggrieved under the
Fourth Amendment, 'a defendant must demonstrate that he personally has an
expectation of privacy in the place searched, and that his expectation is reasonable
. . . .' "  *Id.* at *9 (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).  The
Government cites case law from outside this circuit in support of its contention that
Defendant lacks standing by virtue of being evicted.  (*See* Doc. 34 at 4-10).  The
undersigned has not found controlling or even persuasive authority in this circuit
on this issue, but notes that in *Conard*, the court found that the defendant did not
have a reasonable expectation of privacy in his property that had already been
removed during an eviction and placed on his landlord's yard because "[t]he
property at all pertinent times was unprotected, outside, open to view from the
street in the yard of an unoccupied house, and therefore subject to being searched
through or taken away by anyone who came along."  *Conard*, 2011 U.S. Dist.
LEXIS 125737, at *11-12; *see also* O.C.G.A. § 44-7-55(c) (providing that during
the execution of a writ of possession the tenant's property may be removed and
placed on the landlord's property or other property designated by the landlord or
executing officer and that "[a]fter execution of the writ, such property shall be
regarded as abandoned").  In this case, the discovery and seizure of the rifle,

ammunition, and silencer occurred in Defendant's apartment, before those items were removed from the apartment and placed in the landlord's yard, i.e., before completion of the execution of the writ.  Accordingly, the undersigned will assume without deciding that Defendant has standing to challenge the seizure of those items and consider whether their seizure violated the Fourth Amendment.  For the reasons discussed below, the undersigned finds they were not seized in violation of the Fourth Amendment.

In the first place, it was Moody, a private citizen, who discovered the rifle as he removed Defendant's property during the eviction and brought it to Deputy Skibba's attention.  Moody testified that he was acting on behalf of himself, not law enforcement (Tr. 29-30), and he did not become an agent for law enforcement for purposes of the Fourth Amendment simply because Deputy Skibba was present during that eviction in order to keep the peace.  *See Bevan v. Lee Cnty SO*, 213 Fed. Appx. 824, 829 (11th Cir. 2007) (unpublished decision) (finding that defendant "was not acting under the color of state law when he removed the trailer from the disputed land" where "[l]aw enforcement did not participate in the removal and stated several times that they were present only to keep the peace").  Moody and Deputy Skibba testified that Skibba did not search the apartment or participate in the removal of Defendant's property until after Moody notified him about finding the rifle, at which time Skibba saw what appeared to be a homemade

11

silencer in plain view.  Skibba also observed ammunition in plain view; he did not search Defendant's apartment for it.  (Tr. 35).

Moreover, after Deputy Skibba was unsuccessful in his efforts to communicate with Defendant about his rifle, he acted reasonably in taking custody of the rifle, ammunition, and silencer for public safety, rather than allowing those items to be left on the landlord's yard with Defendant's other property, at which point they would have been deemed abandoned under Georgia law, *see* O.C.G.A. § 44-7-55(c), and "unprotected, outside, open to view from the street in the yard of an unoccupied house, and therefore subject to being searched through or taken away by anyone who came along."  *Conard*, 2011 U.S. Dist. LEXIS 125737, at *11-12.  Since "placing a cache of weapons along with the rest of the tenant's property on the sidewalk can be an invitation to thieves, the temporary sequestration of the tenant's guns by the police is a justifiable measure of public safety." *Perry v. Sheahan*, 222 F.3d 309, 319 (7th Cir. 2000) (Posner, J. concurring in part and dissenting in part).

Defendant argues, however, that the items should be suppressed because the eviction itself was unlawful, and therefore Moody and Deputy Skibba were not lawfully in Defendant's apartment to discover and then take custody of the rifle, silencer, and ammunition.  (Doc. 33 at 9).  Specifically, Defendant contends that "[t]he testimony at the hearing was not sufficient to establish that service was

properly made upon Mr. Russell in that the sheriff tacked and nailed the service on the wrong door, that is the door to the landlord." (Doc. 33 at 10).

Here, Moody followed Georgia's dispossessory laws by first demanding possession of the premises and then filing a dispossessory affidavit with the Forsyth County Magistrate Court, as required by O.C.G.A. § 44-7-50(a). He identified on the affidavit the name of the person to be evicted, i.e. Thomas Russell III, and listed his address as "4310 Matt Highway, Cumming, Georgia." (Gov't Ex. 2). There is no indication that the studio apartment Defendant rented had a different address; it was part of the premises located at 4310 Matt Highway, and there was no other mailing address for that apartment.[6] Upon receipt of the dispossessory paperwork, Deputy Loggins twice unsuccessfully attempted personal service on Defendant, and then served Defendant by tack and mail as allowed by O.C.G.A. § 44-7-51(a). He accomplished that service by placing the paperwork in the door to the house at 4310 Matt Highway, i.e., the address on the dispossessory paperwork, and mailing it to that address, and Moody then placed the paperwork in the door to the studio apartment attached to the garage at that address. Moody further testified that Defendant appeared to have received the paperwork as he noticed later that it was gone. (*See* Tr. 21, 23, 62). In light of the fact that

---

[6] The lease describes the leased premises as "4310 studio appt" (Gov't Ex. 1), but there is no indication that that is the physical or mailing address for the apartment such that the sheriff could have served Defendant at that address if the dispossessory paperwork had listed "4310 studio appt" as Defendant's address.

13

Defendant's studio apartment shared an address with the house at that location, and Defendant was identified as the person to be evicted from that address, it appears that the sheriff properly served Defendant with the dispossessory paperwork by tacking it to a door to the house at 4310 Matt Highway and mailing it to that address.

But even if the service was technically insufficient because Moody did not specify on the paperwork "studio apartment" or "garage apartment" at 4310 Matt Highway or because Deputy Loggins did not leave the paperwork on the door to the studio apartment, that deficiency by itself does not render the seizure at issue unconstitutional. *See, e.g.*, *United States v. Adigun*, No. 1:10-cr-00202-RWS-RGV, 2011 U.S. Dist. LEXIS 60310, at *84-85 (N.D. Ga. May 4, 2011) ("Since the legality of Detective Guy's search does not turn on whether Tabb properly evicted Adigun, the Court need not decide these contested questions of state property law, and may resolve the issue entirely on analysis of Fourth Amendment principles."), *adopted by* 2011 U.S. Dist. LEXIS 60303 (N.D. Ga. June 3, 2011). Instead, " 'reasonableness is still the ultimate standard' under the Fourth Amendment." *Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992). Here, Deputy Skibba knew that Moody had obtained a writ of possession signed by a magistrate judge which authorized him to evict Defendant from 4310 Matt Highway, Cumming, Georgia (Gov't Ex. 8), and Moody, who lived in the house at 4310 Matt Highway,

had a key to the apartment.   Deputy Skibba testified that he had the original writ of possession with him, and he had no reason to believe that there was any issue with the service of process or that the order was not valid because it was signed by a judge.  (Tr. 91-92).  Thus Deputy Skibba had an objectively reasonable belief that Moody had the legal authority to enter Defendant's apartment at 4310 Matt Highway, Cumming, Georgia to effectuate the eviction, i.e., to remove Defendant's belongings and place them outside.   *See* O.C.G.A. § 44-7-55(c). Moreover, as discussed above, Deputy Skibba acted reasonably in taking the rifle, silencer, and ammunition discovered during the apparently lawful eviction process in order to protect the public.

On this front, the undersigned finds the discussions in *Adigun* and *Soldol* instructive.  In *Adigan*, the defendant argued that the warrantless searches of his restaurant violated the Fourth Amendment because Tabb, her landlord, "had failed to lawfully evict her from the premises prior to granting law enforcement permission to enter and seize any items they believed to have evidentiary value." 2011 U.S. Dist. LEXIS 60310, at *82.  The court explained that it "need not resolve these issues because it finds that [the law enforcement officers] reasonably believed that Adigun no longer had possession of the premises based on Tabb's statements and the surrounding facts and circumstances."  *Id.* at *83.  The court

15

found "Detective Guy's belief that Tabb had possession and authority to consent to

a search of [the] restaurant was objectively reasonable because:

> Although Detective Guy did not take the time to review the minutiae of the lease documents to confirm that Tabb had complied with all of the default and notice provisions therein, Tabb presented Detective Guy with documentation, and based on the visible state of the property, the fact that Detective Guy knew that Adigun had been incarcerated nearly three months earlier in May, Tabb's assertions that he had possession of the property, and the fact that Tabb had a key that allowed him to unlock the front and interior doors, a reasonable person in Detective Guy's position would have believed that Tabb had in fact evicted Adigun, or that she had abandoned the premises, leaving Tabb, the landlord, in possession.

*Id.* at 88-90.

In *Soldol*, the Supreme Court found to be exaggerated the concerns that

allowing Fourth Amendment claims based on law enforcement actions taken

during repossession or eviction proceedings would federalize "areas of law

traditionally the concern of the States" and stressed that " 'reasonableness is still

the ultimate standard' under the Fourth Amendment."[7]   506 U.S. at 71.   The Court

hypothesized, "Assuming, for example, that the officers were acting pursuant to a

---

[7] The Court found in *Soldol* that the plaintiffs had alleged a seizure for purposes of the Fourth Amendment where deputies were present and allowed the landlord to evict the plaintiffs from their trailer and haul the trailer away, but the Court made no finding on "[w]hether the Amendment was in fact violated" because that was "a different question that requires determining if the seizure was reasonable" and was not before the Court.   506 U.S. at 61-62, 72.   The undersigned notes that in contrast to the facts of this case, the deputies in *Soldol* knew that there was no eviction order and that the landlord's actions were unlawful, but refused to interfere with the eviction.   *Id.* at 58-59.

court order . . . as often would be the case, a showing of unreasonableness on these facts would be a laborious task indeed." *Id.* Here, Deputy Skibba acted pursuant to a court order, a writ of possession, which authorized Moody, who had a key, to enter Defendant's apartment and remove his belongings. It was during that process that Moody discovered the rifle and gave it to Deputy Skibba. Deputy Skibba had an objectively reasonable belief that the eviction was lawful and acted reasonably in seizing the rifle, silencer, and ammunition rather than leaving them abandoned on the landlord's yard. Thus, the undersigned finds that his actions did not violate the Fourth Amendment, and therefore suppression is not required.

### Summary

For the reasons discussed above, it is **RECOMMENDED** that Defendant's motions to suppress evidence (Docs. 13, 21) be **DENIED**. Defendant's motion to suppress statements (Doc. 15) is **DEFERRED** to the district judge.

**IT IS ORDERED** that, subject to a ruling by the District Judge on any objections to orders or recommendations of the undersigned Magistrate Judge, this case is **certified ready for trial.**

**IT IS SO ORDERED, REPORTED AND RECOMMENDED** this 3rd day of October, 2016.

  /s/ *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge

17